IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TYEAST PETTIT,                          *

    Plaintiff,                      *

       v.                        *            Civil Action No. RDB-15-2694

LIFE INSURANCE COMPANY                  *
OF NORTH AMERICA,
                                        *
    Defendant.
                                        *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Tyeast Pettit ("Plaintiff" or "Pettit") has brought this action pursuant to

Sections 502(a), (e)(1) and (f) of the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. §§ 1132(a), (e)(1) and (f), against Defendant Life Insurance Company of North

America ("Defendant" or "LINA"), challenging LINA's denial of her claims for life

insurance benefits (Count One) and long-term disability benefits[1] (Count Two) under an

employee benefit plan[2] governed by ERISA.[3] Compl., p. 1, ECF No. 1.  Currently pending

before this Court is Defendant's Motion for Partial Summary Judgment Regarding the

---

[1] As explained *infra*, the Plan includes separate long-term disability and life insurance policies, both issued and administered by LINA.  *See* LTD Policy, Def.'s Ex. 1, ECF No. 18-3; Life Policy, Def.'s Ex. 2, ECF No. 18-4.

[2] Plaintiff initially named Fresenius Medical Care Holdings Plan (the "Plan") as an additional Defendant.  *See* Compl., p. 1, ECF No. 1.  However, by agreement of the parties, this Court has subsequently dismissed the Plan from this action.  *See* Marginal Order Approving Stipulation of Dismissal, ECF No. 10.

[3] Additionally, Plaintiff alleges that Defendant has violated ERISA Sections 502(a)(1)(A) and (c)(1), 29 U.S.C. §§ 1132(a)(1)(A) and (c)(1) "by failing to supply information and comply with notice requests" (Count Three). However, as explained *infra*, the pending motion pertains only to the standard of review this Court will apply in reviewing LINA's benefits determinations in Counts One and Two.

Standard of Review (ECF No. 18).  LINA contends that this Court should review its denial of benefits for "abuse of discretion."  Pettit argues for "de novo" review.  The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016).  For the reasons that follow, Defendant's Motion for Partial Summary Judgment Regarding the Standard of Review (ECF No. 18) is DENIED.  Accordingly, benefits determinations made by LINA under the ERISA Plan at issue in this case shall be reviewed under the default *de novo* standard.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews all facts and reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).  The facts of this case are as follows:

Plaintiff Tyeast Pettit ("Plaintiff" or "Pettit") resides in Fruitland, Maryland.  Compl., ¶ 3, ECF No. 1.  Pettit worked as a Clinical Manager at Fresenius Medical Care North America ("Fresenius") until June 1, 2012, at which time she was unable to continue working "in her own occupation . . . due to multiple sclerosis that was initially diagnosed in 2008 with progressive symptoms including the inability to balance, pain, and fatigue."  *Id.* at ¶¶ 6-7.  As a Fresenius employee, Pettit was covered by the Fresenius Medical Care Holdings Plan (the "Plan"), a Massachusetts-based employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and "providing for employee benefits including long-term disability and waiver of premium for life insurance

coverage." *Id.* at ¶ 5.  Defendant Life Insurance Company of North America ("Defendant" or "LINA") is the Plan's administrator and insurer, and conducts its business.  *Id.* at ¶ 4.

The Plan includes two separate policies, a Long-Term Disability Policy (the "LTD Policy") and a Life Insurance Policy (the "Life Policy"), both issued and administered by LINA.  *See* LTD Policy, Def.'s Ex. 1, ECF No. 18-3; Life Policy, Def.'s Ex. 2, ECF No. 18-4.  Both policies include integration clauses, which provide that "[t]he entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Employees [Insureds]."  LTD Policy at 21; Life Policy at 25.  Additionally, both policies include procedures for amending the policies, which provide that "[n]o change in the Policy will be valid until approved by an executive officer of the Insurance Company.  This approval must be endorsed on, or attached to, the Policy.  No agent may change the Policy or waive any of its provisions."  *Id.*

Both policies include an Amendatory Rider, which provides that "[t]he Plan Administrator has appointed the Insurance Company [LINA] as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims."  LTD Policy at 26-27; Life Policy at 32-33.  Additionally, a separate Appointment of Claim Fiduciary form ("ACF") defines LINA's responsibilities as follows:

> Claim Fiduciary [LINA] shall be responsible for adjudicating claims for benefits under the Plan, and for deciding any appeals of adverse claim determinations. Claim Fiduciary shall have the authority, in its discretion, to interpret the terms of the Plan, including the Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact. All decisions made by such Claim Fiduciary shall be final and binding on Participants and Beneficiaries of the Plan to the full extent permitted by law.

3

ACF, Def.'s Ex. 4, ECF No. 18-6. The ACF further provides that the "Plan Administrator shall include the foregoing in Summary Plan Descriptions furnished to Participants. Claim Fiduciary shall provide Plan Administrator with a form of Summary Plan Description, based on its standard Certificates of Insurance, which contains in substance the foregoing, in addition to a summary of the terms of the Policies." *Id.* Accordingly, Certificates of Insurance for both policies were distributed to Plan participants and provided the following:

> The Plan Administrator has appointed the Insurance Company [LINA] as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company shall be final and binding on Participants and Beneficiaries to the full extent permitted by law.

Group Disability Insurance Certificate, Def.'s Ex. 5, p. 17, ECF No. 18-7; Group Life Insurance Certificate, Def.'s Ex. 6, p. 21, ECF No. 18-8.[4]

LINA paid Pettit long-term disability benefits through November 27, 2014 under the LTD Policy [Policy #LK0980154]. Compl., ¶ 8, ECF No. 1. Additionally, Pettit "applied for and continues to receive Social Security Disability benefits based upon the finding that she is totally and permanently disabled from substantial gainful activity." *Id.* at ¶ 9. However, via letter dated June 24, 2015, "LINA issued a denial of long-term disability

---

[4] In her Opposition to the pending Motion, Plaintiff requested "discovery . . . in the form of requests for production of documents to pin down the defendant as [to] what it now claims are summary plan documents, insurance certificates and actual plan documents and their respective dates of creation." Pl.'s Opp'n, p. 2, ECF No. 21. At the request of this Court, Defendant has subsequently filed correspondence documenting that the exhibits cited *supra* (LTD Policy, Life Policy, ACF, Insurance Certificates) were in fact provided to Plaintiffs' counsel before briefing began on the pending Motion. *See* Correspondence, ECF No. 27. Accordingly, via Letter Order dated June 3, 2016 (ECF No. 29), this Court ruled that "the discovery issue, as reflected by ECF Nos. 23, 24, and 25, is now MOOT."

benefits under [the LTD Policy]." *Id.* at ¶ 14. Pettit also filed a claim for "Waiver of Premium/Life Insurance benefits" under the Life Policy [Policy #FLX0980203]. However, "[f]ollowing an initial denial, which plaintiff timely appealed, [LINA] issued a final denial dated June 24, 2015 on the basis that 'we have not been provided with medical documentation to support an impairment of functional capacity severe enough to affect your client's ability to work in any sedentary occupation at this time.'" *Id.* at ¶ 10. Pettit claims that "[LINA's] denial was based upon a medical review and a functional capacity evaluation that failed to consider chronic pain, unexpected absences from work and failed to perform a vocational analysis." *Id.* at ¶ 12. "As a result of [LINA's] denial of the Waiver of Premium/Life Insurance benefits," Pettit now claims that she "has not received the proper coverage since September 26, 2014 to which she is entitled, and was denied the waiver of premium under the policy including for life insurance benefits." *Id.* at ¶ 13.

Pettit has brought the present action, pursuant to 29 U.S.C. § 1132(a)(1)(B), to recover benefits under both the Life and LTD Policies (Counts One and Two). *Id.* at ¶¶ 17-28. Additionally, Pettit claims that LINA has violated 29 U.S.C. §§ 1332(a)(1)(A) and (c)(1) by failing to provide her with "requested copies of plan documents, summary plan description, complete claims file and medical evidence used to deny the claim, and communications whether by memo, letter or email" (Count Three). *Id.* at ¶¶ 29-33. Accordingly, Pettit prays that this Court award the following relief:

> (1) declare that the Defendants are obligated to pay Plaintiff her past due long-term disability benefits with reinstatement of long-term disability benefits and the waiver of premium/life insurance coverage; (2) declare that the Defendants be assessed and ordered to pay $110 per day for the failure and/or

refusal to provide requested Plan documents, schedules and policies pursuant to 29 U.S.C. §1132(c)(1); (3) issue an injunction and declaratory relief that LINA produce all relevant documents under section 503-1(m)(8) to include not only those documents considered but also those documents "submitted, considered or generated" in compliance with (b)(5) that the plan has been applied consistently to similarly situated claimants, identify all of the medical and vocational experts whether relied upon or not, identify the actual reviewer and his or her credentials, provide internal rules, guidelines and protocols relied upon or applied in terminating plaintiff's claim for benefits; and (4) award retroactive long-term disability benefits and reinstate future benefits; (5) award Plaintiff the costs of this action, interest, and reasonable attorneys' fees; and (6) award such other further and different relief as may be just and proper.

*Id.* at p. 6-7.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court "must not

6

weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility.  *See Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1866-68 (2014) (*per curiam*).

## ANALYSIS

Plaintiff Tyeast Pettit ("Plaintiff" or "Pettit") has brought this action, pursuant to 29 U.S.C. § 1132(a)(1)(B), to recover long-term disability benefits and a waiver of life insurance premiums (Counts One and Two) under the Fresenius Medical Care Holdings Plan (the "Plan"), an employee welfare benefit plan maintained by her employer, Fresenius Medical Care North America ("Fresenius"), and administered by Defendant Life Insurance Company of North America ("Defendant" or "LINA").  *See generally* Compl., ECF No. 1.[5]  The Plan includes a Long-Term Disability Policy (the "LTD Policy") and a Life Insurance Policy (the "Life Policy"), both issued and administered by Defendant.  *Id.* at ¶¶ 10, 14.

Plaintiff has previously applied for benefits under the Plan, but Defendant has denied her benefit requests.  *Id.*  The parties agree that the Plan is governed by the Employee

---

[5] As indicated *supra*, Plaintiff also seeks a declaration that Defendant "be assessed and ordered to pay $110 per day for the failure and/or refusal to provide requested Plan documents, schedules and policies pursuant to 29 U.S.C. § 1132(c)(1)" and "an injunction and declaratory relief that [Defendant] produce [*inter alia*] all relevant documents under [S]ection 503-1(m)(8)" (Count Three).  *See* Compl., p. 6, ECF No. 1.  However, as explained herein, the pending motion pertains only to the standard of review applicable to Plaintiff's 29 U.S.C. § 1132(a)(1)(B) claims in Counts One and Two.

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Accordingly, a civil action by a plan "participant or beneficiary . . . to recover benefits due" under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), is Plaintiff's exclusive remedy. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("§ 502(a)(1)(B) of ERISA . . . provides an exclusive federal cause of action for resolution of such disputes."). However, the parties disagree as to the standard of review this Court should apply in reviewing Defendant's benefit determinations. In the pending Motion for Partial Summary Judgment Regarding the Standard of Review (ECF No. 18), Defendant contends that this Court should review its denial of Plaintiff's requested benefits for "abuse of discretion," *see* Mot., p. 1, ECF No. 18, whereas Plaintiff argues for "*de novo*" review, *see, e.g.*, Pl.'s Opp'n, p. 5, ECF No. 21.

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (emphasis added). "*Firestone* established that the *default* standard of review is *de novo*, and that an abuse-of-discretion review is appropriate *only when* discretion is vested in the plan administrator." *Woods v. Prudential Ins. Co. of Am.*, 528 F.3d 320, 322 (4th Cir. 2008) (emphasis added). Applying *Firestone*, the United States Court of Appeals for the Fourth Circuit has concluded the following:

> [A]n ERISA plan can confer discretion on its administrator in two ways: (1) by language which "expressly creates discretionary authority," and (2) by terms which "create discretion by implication." *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522-23 (4th Cir. 2000). However, regardless of whether discretion is created expressly or implicitly, we have consistently required that the plan manifest a clear intent to confer such discretion. *See, e.g., id.* at 523; *Gallagher v.*

> *Reliance Std. Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir. 2002). Moreover, we have made it plain that "[i]f a plan does not clearly grant discretion, the standard of review is *de novo*." *Id.* at 270, n. 6.  Finally, in the context of determining whether a plan sufficiently confers discretion, we have held that "[a]ny ambiguity in an ERISA plan is construed against the drafter of the plan . . . and in accordance with the reasonable expectations of the insured." *Id.* (internal quotations omitted).

*Woods,* 528 F.3d at 322.  If a plan clearly grants discretion to an administrator or fiduciary of the plan, "the exercise of assigned discretion is reviewed for abuse of discretion." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 321 (4th Cir. 2008).

As this Court has recently noted, "[a]lthough *Firestone* established a *de novo* default, the exception quickly swallowed the rule . . . [and] invited bad-faith benefit denials, allowing plan administrators to 'impose self-serving terms that severely restrict the ability of a reviewing court to correct a wrongful benefit denial.' " *Weisner v. Liberty Life Ins. Co. of Boston*, No. 24 Civ. JKB-15-2545 (D. Md. June 28, 2016) (under seal) (citations omitted).  Accordingly, "state legislators and insurance regulators have in the recent past enacted statutes, regulations, and administrative rules that either prohibit outright the use of discretionary clauses in insurance contracts or impose limitations on the content and format of these clauses." *Id.* (citation omitted).[6]

Here, neither the LTD Policy (Def.'s Ex. 1) nor the Life Policy (Def.'s Ex. 2) manifests a clear intent to grant LINA discretionary authority, but the Appointment of Claim Fiduciary form ("ACF") (Def.'s Ex. 4) does grant LINA "authority, in its discretion,

---

[6] Plaintiff contends that any discretionary authority granted to LINA under the Plan is void because MD. CODE ANN., INS. § 12-211 prohibits discretionary clauses in disability insurance policies.  *See* Compl., ¶ 16, ECF No. 1; Pl.'s Brief, p. 5, ECF No. 19.  However, for the reasons explained *infra*, the Plan does not clearly grant LINA discretionary authority.  Accordingly, this Court need not reach Plaintiff's argument under MD. CODE ANN., INS. § 12-211.

to interpret the terms of the Plan, including the Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." Accordingly, the issue before this Court is whether the ACF's grant of discretionary authority, also recited in plan summaries within the Policies' Insurance Certificates, is considered part of "the benefit plan" under *Firestone*. *See Firestone*, 489 U.S. at 115.

I.    The Appointment of Claim Fiduciary Form ("ACF") Is Not, as a Matter of Law, a Valid Amendment to the Policies

This Court has held that a "grant of discretion may be derived from any number of plan documents, including the plan itself, summary descriptions, contracts, and the like." *Klebe v. Mitre Grp. Health Care Plan*, 894 F. Supp. 898, 902 (D. Md. 1995), *aff'd*, 91 F.3d 131 (4th Cir. 1996); *see also Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 434 (D.C. Cir. 2011) (holding that courts may consider multiple plan documents in determining the appropriate standard of review); *Wilkinson v. Sun Life & Health Ins. Co.*, 127 F. Supp. 3d 545, 558 (W.D.N.C. 2015) (same). However, neither the United States Court of Appeals for the Fourth Circuit nor this Court has yet to consider whether an Appointment of Claim Fiduciary ("ACF"), like the one in this case, constitutes an ERISA plan document. However, other United States District Courts within the Fourth Circuit have held that nearly identical ACFs are plan documents, but *only where* they have effectively "amended" the Policies in compliance with the Policies' amendment procedures[7]. *See DuPerry v. Life Ins. Co. of N. Am.*, No. 5:08-CV-344-FL, 2009 U.S. Dist. LEXIS 83532, at *28 (E.D.N.C. Aug. 10,

---

[7] ERISA requires that employee benefit plans "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan," 29 U.S.C. § 1102(b)(3), "but does not set forth any other parameters for such procedures." *See DuPerry*, 2009 U.S. Dist. LEXIS at 27 (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 80 (1995)).

2009), *aff'd*, 2011 U.S. App. LEXIS 1399 (4th Cir. N.C., Jan. 24, 2011) (ACF granting discretionary authority to LINA constituted a Plan document because it satisfied both elements of a valid amendment to the Policy)[8]; *Ward v. Life Ins. Co. of N. Am.*, No. 1:08CV675, 2009 WL 2740202, at *5 (M.D.N.C. Aug. 26, 2009) (same); *see also Siegel v. Connecticut Gen. Life Ins. Co.*, 702 F.3d 1044, 1048 (8th Cir. 2013) (Noting United States Magistrate Judge's conclusion that "LINA's decision would be reviewed for abuse of discretion" where "claim fiduciary appointment had been a valid amendment" to the policy).

The LTD and Life Policies in this case both include integration clauses, which provide that "[t]he entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Employees [Insureds]." *See* LTD Policy, Def.'s Ex. 1, p. 21, ECF No. 18-3; Life Policy, Def.'s Ex. 2, p. 25, ECF No. 18-4. Additionally, both Policies include procedures for amending the Policies, which provide that "[n]o change in the Policy will be valid until approved by an executive officer of the Insurance Company. This approval must be endorsed on, or attached to, the Policy. No agent may change the Policy or waive any of its provisions." *Id.* However, Defendant does not argue that the ACF constitutes a valid amendment to the Policy in accordance with these provisions. In fact, Defendant has not cited *DuPerry*, *Ward*, or *Siegel*. While the ACF in this case was signed by "Matthew G. Manders," who Defendant claims is "an executive officer of LINA . . . authorized to

---

[8] The United States District Court for the Eastern District of North Carolina declined to consider in *DuPerry* whether the ACF, "if it was not a valid amendment," would still constitute "a plan document that did not need to be executed as an amendment to the Policy." *DuPerry*, 2009 U.S. Dist. LEXIS at 26-29.

11

execute" the ACF, *see* Mem. Supp. Mot., p. 3, ECF No. 18-2, there is no indication that the ACF was "endorsed on, or attached to" either of the Policies.  In contrast, the ACF in *DuPerry* "was endorsed on the Policy in LINA's files." *DuPerry*, 2009 U.S. Dist. LEXIS at 28 (citing Aff. of Heather Zapf, DE # 31-3).  *See also Wilkinson*, 127 F. Supp. 3d at 557 (Statement of Rights "attached to and delivered with the Policy" was an ERISA plan document).

In support of the pending motion, Defendant has submitted the Declaration of Eric Bishop, Vice President of Finance, Administration for National Medical Care, Inc., a subsidiary of Fresenius, and the Declaration of Alexander J. Gelb, Senior Operations Representative for LINA. Bishop Decl., Def.'s Ex. 3, ECF No. 18-5; Gelb Decl., Def.'s Ex. 7, ECF No. 18-9.  According to Bishop, "Fresenius Medical intended that the ACF would govern the Plan, would constitute a Plan document, and would be read in conjunction with the LTD Policy and Life Policy."  Bishop Decl. at ¶ 5.  According to Gelb, LINA also understood that "the ACF would govern the Plan, would constitute a Plan document, and would be read in conjunction with other Plan documents, including the [Policies]."  Gelb Decl. at ¶ 4.  However, neither Bishop nor Gelb suggests that the ACF was "endorsed on, or attached to" either of the Policies, a requirement for a valid Policy amendment.

II.   The Seventh Circuit's Decision in *Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444, 448 (7th Cir. 2009), Holding that an ACF was a Plan Document, Involved a Set of Documents Readily Distinguishable from Those in This Case

In *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011), the United States Supreme Court faced an issue similar to the question presently before this Court.  In *Amara*, the

Solicitor General took the position that "the terms of [ERISA plan] summaries are terms of the plan." *Amara*, 563 U.S. at 436. The Supreme Court rejected that argument, concluding that ERISA plan "summary documents . . . provide communication with beneficiaries about the plan, but . . . do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)." *Id.* at 438.

Rather than arguing that the ACF was a valid amendment to the Policies, Plaintiff relies almost exclusively on the Seventh Circuit's holding in *Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444, 448 (7th Cir. 2009), a pre-*Amara* case, that a "Claim Fiduciary Appointment" document, similar to the ACF in this case, constituted a plan document on its own. Similar to the ACF in this case, the "Claim Fiduciary Appointment" document in *Raybourne* granted Cigna " 'the authority, in its discretion, to interpret the terms of the Plan [and] to decide questions of eligibility for coverage or benefits under the Plan.' " *Raybourne*, 576 F.3d at 448. Further, a "Summary Plan Description" ("SPD") confirmed that "[t]he Plan Administrator has delegated to the insurance company the full and complete discretionary authority and responsibility to decide all questions of eligibility for benefits under the Plan." *Id.*

The Plaintiff in *Raybourne* objected that the Claim Fiduciary Appointment was not a Plan document because it was "extrinsic," "he did not receive it until [the] litigation was underway," and "it [was] neither incorporated nor referenced anywhere in the plan." *Id.* However, the Seventh Circuit found that the Claim Fiduciary Agreement itself "explain[ed] why Raybourne did not receive it—it state[d] that the plan administrator must describe its

13

discretion "in Summary Plan Descriptions furnished to Participants.' " *Id.* The SPD "explain[ed] that the '*actual provisions of the Plan* are set forth in the insurance policy *and the claims fiduciary agreement.*' " *Id.* (emphasis added). The Seventh Circuit dismissed the Plaintiff's objection, citing its earlier decision in S*emien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 811 (7th Cir. 2006), for the proposition that "often the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as 'the plan.' " *Id.* "[G]iven that the Claim Fiduciary Appointment provides the name of the plan and plan administrator, is signed by representatives of the plan and Cigna, and states that it 'shall be effective' from the date of the underlying insurance policy," the Seventh Circuit concluded that "it is difficult to see how it could be anything other than a plan document." *Id.* at 449.

Like the Claim Fiduciary Appointment document in *Raybourne*, the ACF in this case "provides the name of the plan and plan administrator, is signed by representatives of the plan and [LINA], and states that it 'shall be effective' from the date of the underlying insurance policy." *See Raybourne*, 576 F.3d at 449. The ACF indicates that "Fresenius Medical Holdings, Inc." is both the "Name of Plan" and "Plan Administrator," it is signed by both the President of the Insurance Company and the Senior Benefits Manager of the Plan, and provides that the "Claim Fiduciary shall serve as such effective from and after the effective date of each of the Policies." *See ACF, Def.'s Ex. 4, ECF No. 18-6. Furthermore, like in *Raybourne*, the SPDs contained in the Insurance Certificates distributed to Plaintiff and other Plan participants indicate the following:

> The Plan Administrator has appointed the Insurance Company [LINA] as the
> named fiduciary for adjudicating claims for benefits under the Plan, and for

14

deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company shall be final and binding on Participants and Beneficiaries to the full extent permitted by law.

Group Disability Insurance Certificate, Def.'s Ex. 5, p. 17, ECF No. 18-7; Group Life

Insurance Certificate, Def.'s Ex. 6, p. 21, ECF No. 18-8.

Despite these similarities, several courts have held since the *Raybourne* decision that

ACFs nearly identical to the one in this case are not Plan documents. *See, e.g.*, *Moran v. Life*

*Ins. Co. of N. Am. Misericordia Univ.*, No. 3:CV-13-765, 2014 WL 4251604, at *9 (M.D. Pa.

Aug. 27, 2014); *Barbu v. Life Ins. Co. of N. Am.*, 987 F. Supp. 2d 281, 289 (E.D.N.Y. 2013);

*Francis v. Anacomp, Inc. Accidental Death & Dismemberment Plan*, No. 10CV467 BEN BGS, 2011

WL 4102143, at *4 (S.D. Cal. Sept. 14, 2011); *Heim v. Life Insurance Company of North America*,

slip op., Case No. Civ.A. 10–1567, 2010 WL 5300537 (E.D. Pa. 2010).

The United States District Court for the Eastern District of New York held in *Barbu*

*v. Life Ins. Co. of N. Am.*, 987 F. Supp. 2d 281, 289 (E.D.N.Y. 2013), another case involving

LINA Policies, that an ACF nearly identical to the ACF in this case was not a Plan

document.  As in this case, LINA declined to argue in *Barbu* that the ACF was a valid

amendment to the Policy.  *See Barbu*, 987 F. Supp. 2d at 288, n. 4.  Rather, LINA argued that

the ACF itself constituted a valid Plan document, relying on the Seventh Circuit's decision in

*Raybourne*.  *Id.* at 286.  However, the *Barbu* court declined to follow *Raybourne* because the

documents in the record were distinguishable from those before the *Raybourne* court.  First, a

clause in the SPD before the *Raybourne* court explicitly indicated that "provisions of the Plan

15

are set forth in the insurance policy *and the claims fiduciary agreement*." *Id.* at 287 (citing *Raybourne*, 576 F.3d at 448) (emphasis added). In contrast, the LINA Policy SPD in *Barbu*, contained in a Certificate of Insurance, included no such provision. *Id.* The *Barbu* court found it "critical" that the defendant in *Raybourne* "could at least point to a clause in the SPD stating that the ACF *contained plan terms*." *Id.* (emphasis added). It is important to note that, like the LINA SPD in *Barbu*, the Plan summaries in this case do not include any language indicating that the ACF contains Plan terms.

The *Barbu* Court further distinguished the LINA documents in that case from the Cigna documents in *Raybourne* on the grounds that the Policy in Barbu included an integration clause that did not "include the ACF among the three items ('the Policy, the application of the Employer ... and the applications ... of the Insureds,') making up the 'entire contract.'" *Id.* In contrast, "[t]here was no integration clause discussed in *Raybourne*." *Id.* Here, just like the LINA policy in *Barbu*, the Life and LTD Policies both include integration clauses explicitly providing that "[t]he entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Employees [Insureds]." LTD Policy at 21; Life Policy at 25. As the *Barbu* court concluded, the presence of this clause directly contradicts Defendant's contention that the ACF should be read with the Policies as a Plan document. *Barbu*, 987 F. Supp. 2d at 287.[9]

---

[9] While the integration clause refers to the "entire contract" as opposed to the "Plan" or "entire set of Plan documents," the *Barbu* court cited a series of recent decisions relying on similar integration clauses in declining to enforce documents extrinsic to insurance policies. *See, e.g., Jobe v. Med. Life. Ins. Co.*, 598 F.3d 478, 486 (8th Cir. 2010) (reviewing multiple "plan documents" and concluding that fully-integrated policy

Furthermore, the *Barbu* court found it significant that *Raybourne* was issued prior to the United States Supreme Court's decision in *CIGNA Corp. v. Amara*, holding that ERISA plan summaries do not contain plan terms. *Amara*, 536 U.S. at 438.  The *Barbu* court concluded that "the guidance of the Supreme Court in *Amara* on SPDs applies with equal force to ACFs" and that neither document becomes part of a Plan without explicit language so stating. *Barbu*, 987 F. Supp. 2d at 287.  There was no language explicitly making the ACF in *Barbu* part of the plan, nor is that language present in this case.

The United States District Court for the Middle District of Pennsylvania likewise held in *Moran v. Life Ins. Co. of N. Am. Misericordia Univ.*, No. 3:CV-13-765, 2014 WL 4251604, at *9 (M.D. Pa. Aug. 27, 2014) that a nearly identical LINA ACF did not constitute a Plan document.  The *Moran* court adopted the reasoning in *Barbu*, concluding that "the Supreme Court's guidance on SPDs in *Amara* also applies to Claim Fiduciary forms" and that "LINA failed to identify any provision in any document indicating that the Claim Fiduciary form is incorporated or integrated into the Plan." *Id.*  Like in *Barbu*, and the present case, the documents in the record in *Moran* included no clause stating that the ACF included Plan terms. *See id.*  Additionally, as in *Barbu* and the present case, the Policy "contain[ed] an integration clause supporting the contrary conclusion." *Id.*

---

"controls over the inconsistent grant of discretion to the administrator in the summary plan description"); *Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1161 (9th Cir. 2001) (holding SPD unenforceable where policy's integration clause limited entire contract to policy and applications); *Hamill v. Prudential Ins. Co. of Am.*, No. 11–CV–1464, 2013 WL 27548, at *2 (E.D.N.Y. Jan. 2, 2013) (noting importance of SPD's omission from policy's integration clause referring to "[t]he entire Group Contract").

For these reasons, the Seventh Circuit's decision in *Raybourne* is not directly applicable to the ACF in this case.[10]   Accordingly, by relying almost exclusively on *Raybourne*, Defendant has failed to demonstrate that the grant of discretion contained in the ACF in this case is sufficient to invoke abuse of discretion review.   *See also Francis v. Anacomp, Inc. Accidental Death & Dismemberment Plan*, No. 10CV467 BEN BGS, 2011 WL 4102143, at *4 (S.D. Cal. Sept. 14, 2011) (applying *de novo* standard of review where policy purported to be fully integrated, ACF did not amend the policy, and ACF was not described in SPD); *Heim v. Life Insurance Company of North America*, slip op., Case No. Civ.A. 10–1567, 2010 WL 5300537 (E.D. Pa. 2010) (applying *de novo* standard where LINA's Claim Fiduciary Form was not attached to the insurance policy or described in the summary plan document).

III.   The Language Contained in the Amendatory Riders to the Policies Does Not, On its Own, Clearly Grant Discretionary Authority to LINA

The Life and LTD Policies do include Amendatory Riders, which provide that "[t]he Plan Administrator has appointed the Insurance Company [LINA] as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims."  LTD Policy at 26-27; Life Policy at 32-33.  Defendant contends that this language alone is sufficient to confer discretionary authority on LINA.   *See* Mem. Supp. Mot., p. 6, ECF No. 18-2.  However, the United States Court of Appeals for the Fourth Circuit has concluded that even where a party "qualifies as a *fiduciary* under ERISA" its decisions will

---

[10] This Court is aware of only one case relying on *Raybourne* to conclude that an ACF is a plan document.  *See Ehas v. Life Ins. Co. of N. Am.*, No. 12 C 3537, 2012 WL 5989215, at *2 (N.D. Ill. Nov. 29, 2012).  However, there was no integration clause discussed in *Ehas*.  Additionally, the *Ehas* court ultimately held that the *de novo* standard of review applied because an Illinois statute "strip[ped] the plan of its discretion-conferring language."  *Ehas*, 2012 WL 5989215 at 10.

only be entitled to deferential review where it "has also been given discretionary authority with regard to decisions about eligibility for benefits *and* construction of the plan." *See Doe v. Grp. Hospitalization & Med. Servs.*, 3 F.3d 80, 85 (4th Cir. 1993) (emphasis added) (citing *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60-61 (4th Cir. 1992) (status as a fiduciary is not an indivisible concept and only specifically assigned discretionary duties are entitled to discretionary review)).   Additionally, "discretionary authority is not conferred 'by the mere fact that a plan requires a determination of eligibility or entitlement . . . .' " *Woods v. Prudential Ins. Co. of Am.*, 528 F.3d 320, 322 (4th Cir. 2008) (quoting *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 269 (4th Cir. 2002), *as amended* (Oct. 24, 2002)).

Defendant cites one case, *Van Anderson v. Life Ins. Co. of N. Am.*, No. 4:11CV00050, 2012 WL 1077794, at *4 (W.D. Va. Mar. 30, 2012), in support of its position.  In *Van Anderson*, the United States District Court for the Western District of Virginia found that ERISA plan language identical to the Amendatory Rider language in this case qualified as a grant of discretionary authority sufficient to trigger review for abuse of discretion.  However, the Court provided no explanation for that finding or analysis of its reasons, and did not acknowledge the Fourth Circuit's guidance in the *Doe*, *Coleman*, *Woods*, or *Gallagher* cases, discussed *supra*.  *See Van Anderson*, 2012 WL 1077794 at *4.  Indeed, the parties in *Van Anderson* had already agreed that LINA's benefits determinations would be reviewed for abuse of discretion.  *Id.*  On the contrary, several courts have explicitly held that the above-quoted Amendatory Rider language is insufficient to confer discretionary authority.  *See, e.g., Moran,* 2014 WL 4251604, at 5 ("language in the Group Policy identified by LINA is silent

regarding the discretion afforded and exercised by the plan fiduciary in making claims decisions . . . [and] does not clearly indicate that LINA has discretion to interpret the rules, to implement the rules, and even to change them entirely.")(internal quotations omitted); *Mercer v. Life Ins. Co. of N. Am.*, No. CIV.A. 11-0372, 2011 WL 4404053, at *5 (W.D. La. Aug. 30, 2011), report and recommendation adopted, No. CIV.A. 11-0372, 2011 WL 4433107 (W.D. La. Sept. 21, 2011) ("[T]he plan language identified by LINA remains silent regarding the discretion exercised by the plan fiduciary to make claim decisions. Moreover, LINA has not identified any plan provisions that expressly or unequivocally grant it authority to construe plan terms and render final decisions regarding eligibility for benefits."); *Cathey v. Dow Chem. Co. Med. Care Program*, 907 F.2d 554, 559 (5th Cir. 1990) (plan language designating insurance company as the "Named Fiduciary," and according it with authority to render a "final decision on a claim for benefits," was not sufficient to confer discretionary authority).

For these reasons, the documents in the record before this Court do not evidence a clear intent to grant LINA discretionary authority as a matter of law.  Therefore, Defendant's Motion for Partial Summary Judgment Regarding the Standard of Review (ECF No. 18) is DENIED.  Accordingly, this Court will apply the default *de novo* standard of review in adjudicating Plaintiff's claims for Life and LTD benefits under the ERISA Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B) (Counts One and Two).

**<u>CONCLUSION</u>**

For the reasons stated above, Defendant's Motion for Partial Summary Judgment Regarding the Standard of Review (ECF No. 18) is DENIED.   Accordingly, benefits determinations made by LINA under the ERISA Plan at issue in this case shall be reviewed under the default *de novo* standard.

A separate Order follows.


Dated: July 11, 2016                          _____/s/_____
                                              Richard D. Bennett
                                              United States District Judge

21